Joseph P. CONNORS, Sr.,
et al., Appellants,

v.

INCOAL, INC., a/k/a Incoal Coal
Co., et al., Appellees.

No. 92–7023.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 16, 1993.

Decided June 4, 1993.

Kathleen M. Dowd, Washington, DC, argued the cause for appellants. With her on the briefs were David W. Allen, Margaret M. Topps and Corina M. Trainer, Washington, DC.

John R. Woodrum, Washington, DC, argued the cause for appellees. With him on the brief were Lynn M. Rausch and Kenneth G. Robbett, Washington, DC.

Carol Connor Flowe, General Counsel, Pension Benefit Guar. Corp., Jeffrey B. Cohen, Deputy General Counsel and Paula J. Connelly, Senior Counsel, Washington, DC, filed a brief for amicus curiae Pension Benefit Guar. Corp.

Before: EDWARDS, RUTH B. GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

Opinion concurring in the judgment filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Circuit Judge:

The issue in this case is whether a partnership known as Double A Farms is liable for payments to pension plans under the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, the parties dispute whether Double A Farms, which the appellees own, is a "trade or business" under section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1) (1988), and is therefore liable for the withdrawal liability of Incoal, Inc. ("Incoal"), also owned by the appellees. Incoal incurred the withdrawal liability when it stopped contributing to two multiemployer pension plans in 1985. Appellants, the trustees of the pension plans, sued Incoal and Double A Farms to collect Incoal's unpaid withdrawal liability. Although finding Incoal liable, the District Court granted summary judgment in favor of Double A Farms. The District Court concluded that Double A Farms was not a "trade or business," on the grounds that its farming operations were minimal, and there was no economic "nexus" between Double A Farms and Incoal. We reverse the decision of the District Court because the so-called "nexus" inquiry the court relied upon is irrelevant to determining whether an enterprise constitutes a "trade or business" under section 1301(b)(1). We decline to decide the case on the merits, however, for we conclude that this case should be reconsidered in the first instance by the trial court. We therefore remand the action to the District Court.

## I. BACKGROUND

### A. *Incoal's Withdrawal Liability*

Until 1985, Incoal was a Kentucky coal mining corporation, owned in equal shares by Orville Adkins, his spouse Dixie, their son Adam and his spouse Sally. Incoal was signatory to the National Bituminous Coal Wage Agreements of 1978 and 1981, under which it was required to contribute, on behalf of its employees, to the United Mine Workers of America 1950 Pension Plan and 1974 Pension Plan (the "Plans"). The Plans are multiemployer pension plans within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3) (1988 & Supp. III 1991).

In February 1985, Incoal ceased operations, and stopped contributing to the Plans. By letters dated July 5, 1985 (the "Letters"), the Plans assessed withdrawal liability against Incoal in the amount of $810,610.41.[1] *See* 29 U.S.C. § 1382(2) (1988) (when an employer withdraws from a multiemployer plan, the plan sponsor "shall ... notify the employer of the amount of the withdrawal liability"). The Letters advised Incoal of its rights to request that the Plans review Incoal's withdrawal liability pursuant to section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A) (1988), and to initiate arbitration under section 4221 of ERISA, 29 U.S.C. § 1401 (1988). In addition, the Letters notified Incoal that "all members of a commonly-controlled group of trades and businesses are jointly and severally liable" to the Plans for payment of the withdrawal liability.[2] *See* 29 U.S.C. § 1301(b)(1) (extending employer's withdrawal liability to all "trades or businesses" that are "under common control" with the employer).

In a letter dated July 16, 1985, Incoal advised the Plans that it had depleted its assets and could not pay its withdrawal liability.[3] Incoal did not seek review of the liability determination, nor did Incoal seek arbitration. On January 14, 1986, the Plans declared Incoal in default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5) (1988), and demanded immediate payment of the entire amount of withdrawal liability plus interest.

On November 17, 1986, after Incoal had failed to make any payment, the Plans filed this suit to collect withdrawal liability and interest against both Incoal and S & H Manufacturing, Inc. ("S & H"),[4] as a "trade or business" under "common control" with Incoal. Through discovery, the Plans learned of the existence of Double A Farms, a partnership formed by the owners of Incoal. The Plans subsequently filed an amended complaint alleging that Double A Farms was a "trade or business" under "common control" with Incoal, and was therefore jointly and severally liable for Incoal's withdrawal liability.

The Adkinses established the Double A Farms partnership in 1979, after acquiring five tracts of land, totalling several hundred acres, in and around Harrison County, Kentucky. Orville, Dixie, Adam and Sally Adkins, the owners of Incoal, each owned a 25% partnership interest in Double A Farms. The Adkinses allege that they bought the land both for hunting (and other recreational purposes) and because they believed it was a "good investment." Deposition of Orville Adkins at 68, *reprinted in* A. 157.

In addition to hunting, the Adkinses grew tobacco and raised cattle on the land. They allege that they grew tobacco because they would otherwise lose the tobacco allotments that came with the land, thereby lowering the land's value. *See* Second Deposition of

---

1. *See* Letter from Edward A. Day, Jr., Director, Finance and Administration, UMWA Health and Retirement Funds, to Adams [sic] Adkins, Vice President, Incoal, Inc. 2 (July 5, 1985), *reprinted in* Appendix ("A.") 76 ("Letter # 1") (1950 Pension Plan withdrawal liability of $562,006.75); Letter from Edward A. Day, Jr. to Adams [sic] Adkins 2 (July 5, 1985), *reprinted in* A. 85 ("Letter # 2") (1974 Pension Plan withdrawal liability of $248,603.66).

2. Letter # 1 at 5, *reprinted in* A. 79; Letter # 2 at 5, *reprinted in* A. 88. .

3. *See* Letter from Willis D. Newsome, Accountant for Incoal and Double A Farms, to Edward A. Day, Jr. 1 (July 16, 1985), *reprinted in* A. 95.

4. S & H is a Kentucky corporation owned in equal parts by Orville, Dixie, Adam and Sally Adkins. It is not a party to this appeal.

Willis D. Newsome at 56–57, *reprinted in* A. 214–15. The Adkinses hired a sharecropper to grow the tobacco, a task he performed for perhaps a dozen other neighbors as well. *See* Second Deposition of Adam Adkins at 135, 139, *reprinted in* A. 245, 249. The Adkinses also raised 25 or 30 head of cattle on their land. *See* Deposition of Orville Adkins at 70, *reprinted in* A. 159.

Willis D. Newsome, the accountant for the Double A Farms partnership, confirmed that the partnership was created because the Adkinses "were doing business." First Deposition of Willis D. Newsome at 26–27, *reprinted in* A. 128–29. In the accountant's view, a partnership was "the proper way to handle" the tax consequences of the business.[5] Second Deposition of Willis D. Newsome at 38, *reprinted in* A. 196. For eight consecutive years, from 1980 through 1987, Double A Farms sold goods produced on the Adkinses' land, and Double A Farms' tax records reveal that sales during that period totalled $346,444. For the years 1981 through 1987, combined sales of cattle and tobacco reached a high of $69,530 (1987), and a low of $28,754 (1985). Further, from 1980 through 1987, Double A Farms represented to the Internal Revenue Service ("IRS") that its principal business activity was farming and that its principal products were cattle and tobacco.

### B. The District Court's Decision

On June 6, 1991, the Plans moved for summary judgment against Incoal, S & H and Double A Farms. Incoal and S & H did not oppose the motion. Double A Farms, however, cross-moved for summary judgment, asserting that it did not qualify as a "trade or business" under 29 U.S.C. § 1301(b)(1) and, thus, was not liable for Incoal's withdrawal liability.

On January 15, 1992, the District Court granted the Plans' motion for summary judgment against Incoal and S & H, on the ground that they had conceded liability by failing to oppose the Plans' motion. *Incoal,* 781 F.Supp. at 52. The District Court then granted Double A Farms' cross-motion for

summary judgment, holding that it was not a "trade or business." *Id.* at 54–56. In reaching this conclusion, the trial court found that (1) the tobacco farming at Double A Farms was "incident to maintaining the value of the property as an investment," (2) the "cattle grazing" at Double A Farms was too minimal "to raise the operation to a 'trade or business,'" and (3) there was no economic "nexus" between Double A Farms and Incoal. *Id.* at 56 (emphasis in first quotation omitted).

The Plans appeal the District Court's decision granting summary judgment in favor of Double A Farms.

### II. DISCUSSION

#### A. Statutory Background

Congress enacted ERISA, 29 U.S.C. §§ 1001–1368 (1988 & Supp. III 1991), to "guarantee that 'if a worker has been promised a defined pension benefit upon retirement ... he actually will receive it.'" *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984) (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980)). Under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461 (1988 & Supp. III 1991), an employer who withdraws from a multiemployer pension plan is subject to "withdrawal liability" equal to its proportionate share of the plan's "'unfunded vested benefits.'" *Gray,* 467 U.S. at 725, 104 S.Ct. at 2715 (quoting 29 U.S.C. § 1381(b)(1) (1988)). Withdrawal liability is intended to ensure that "the financial burden of [the] employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Central States, S.E. and S.W. Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1371 (7th Cir.1992); *see also I.A.M. Nat'l Pension*

---

5. The Double A Farms partnership did *not,* as the District Court concluded, own the land on which the farming operations took place. *See Connors*

*v. Incoal, Inc.,* 781 F.Supp. 50, 54 (D.D.C.1992). The parties agree that the Adkinses owned the land as individuals.

*Fund v. Clinton Engines Corp.*, 825 F.2d 415, 416 (D.C.Cir.1987).

The statutory provision at issue in this case, section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), extends an employer's withdrawal liability to all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer. Under section 1301(b)(1), once liability of the principal employer is established, any enterprise that is (1) a "trade or business" and (2) under "common control" with the withdrawing employer is jointly and severally liable for the principal employer's withdrawal liability. *See, e.g., Central States, S.E. and S.W. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir.1992).

The "common control" element of section 1301(b)(1) is satisfied in this case. Double A Farms did not dispute before the District Court, and does not dispute here, that it is under "common control" with Incoal. *See Incoal*, 781 F.Supp. at 53; Brief for Appellees at 21. The only issue before the court, therefore, is whether Double A Farms constitutes a "trade or business" within the meaning of 29 U.S.C. § 1301(b)(1).[6]

**B.** *Whether Double A Farms Is a "Trade or Business"*

█ In deciding that Double A Farms did not constitute a "trade or business" under section 1301(b)(1), the District Court relied on a determination that there was no "economic nexus" between Incoal and Double A Farms. *Incoal*, 781 F.Supp. at 54–56. On this point, the decision of the trial court asserts that where an enterprise is not clearly a "trade or business," but, rather, falls into a " 'shadowy area' " between a "trade or business" and a " 'mere investment or hobby,' " a court may take into account the existence, or lack, of an " 'economic nexus' " between the disputed operation and the principal employer. *Id.* at 56 (quoting *ILGWU Nat'l Retirement Fund v. Minotola Indus., Inc.*, No. 88 Civ. 9131, 1991 WL 79466, at \*5 (S.D.N.Y. May 3, 1991)). Finding "no such nexus, tenuous or direct," between Incoal and Double A Farms, the trial court held that "it would be inappropriate and not in keeping with the purposes underlying ERISA and MPPAA to hold that Double A Farms constitutes a trade or business." *Id.* This holding constitutes legal error.

It is altogether irrelevant, under section 1301(b)(1), whether Double A Farms has an "economic nexus" with Incoal. In this regard, the language of section 1301(b)(1) could not be more plain. That section provides, in relevant part: "For purposes of this subchapter ... all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1). As noted above, this provision imposes two, *and only two*, conditions precedent to liability: (1) an enterprise must be a "trade or business," and (2) the enterprise must be under "common control" with the employer that is signatory to the pension plan. Section 1301(b)(1) makes no mention whatsoever of an "economic nexus" requirement; the "common control" criterion itself constitutes the only "nexus" requirement imposed by section 1301(b)(1), and the District Court was in error to conclude that any further connection between Incoal and Double A Farms was necessary before Double A Farms could qualify as a "trade or business."

Our decision today does not break new ground; indeed, it accords with most of the

---

**6.** The Plans argue, to no avail, that Double A Farms may not contest its alleged withdrawal liability because Double A Farms failed to seek arbitration. Under section 4221 of ERISA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections *1381 through 1399* of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (1988) (emphasis added). When an employer does not pursue arbitration within the time limits established by 29 U.S.C. § 1401(a)(1), the employer generally waives the right to contest its withdrawal liability. *See Clinton Engines*, 825 F.2d at 417–18, 421–22. The waiver rule does not apply here, for the dispute before the court involves section *1301(b)(1)*, which plainly falls outside of the range of provisions for which arbitration is mandated. *See Personnel*, 974 F.2d at 792 & n. 1 (defendant who fails to make timely arbitration request may nevertheless raise the defense that he was not a "trade or business" under section 1301(b)(1)).

circuit court opinions that have discussed the question now before us. *See Personnel*, 974 F.2d at 793 ("§ 1301(b)(1) does not require an economic nexus other than common ownership as a prerequisite to withdrawal liability"); *Slotky*, 956 F.2d at 1374 (same); *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 895 (9th Cir.1988) (same). *But cf. Central States, S.E. and S.W. Areas Pension Fund v. Ditello*, 974 F.2d 887, 890 (7th Cir.1992) (finding the nexus issue "an open question"). We also note that *amicus*, Pension Benefit Guaranty Corporation, considers the nexus requirement incompatible with the statutory scheme. *See Mead Corp. v. Tilley*, 490 U.S. 714, 726, 109 S.Ct. 2156, 2164, 104 L.Ed.2d 796 (1989) (counseling courts to consider the Corporation's views).

## C. *Disposition on Summary Judgment*

Although we conclude that the District Court erred in holding that an economic nexus must be established between Incoal and Double A Farms before the latter can qualify as a "trade or business" under section 1301(b)(1), we believe it is inappropriate for this court to render a decision on the merits at this juncture. We therefore remand the case to the District Court.

We reach this decision based on the nature of the inquiry that a court must undertake to determine whether an enterprise is a "trade or business" under section 1301(b)(1). That inquiry is made somewhat difficult because—as numerous courts have pointed out—section 1301(b)(1) does not define the phrase "trade or business." *See, e.g., Personnel*, 974 F.2d at 794. Section 1301(b)(1) provides only that regulations prescribed under that section "shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under [26 U.S.C. § 414(c) (1988)]." 29 U.S.C.

§ 1301(b)(1). Unfortunately, neither section 414(c), nor the regulations prescribed thereunder, define "trade or business." *See Lafrenz*, 837 F.2d at 894 n. 6.

■ In the absence of further congressional direction on the interpretation of section 1301(b)(1), the courts that have faced the issue have opted against adopting a rigid construction of "trade or business." Rather, they have engaged in an "essentially factual inquiry," *id.*, attempting to determine whether characterizing an enterprise as a "trade or business" will fulfill the underlying purposes of section 1301(b)(1). *See, e.g., id.* at 894 (conducting fact-bound analysis of section 1301(b)(1), guided by statutory purpose); *Personnel*, 974 F.2d at 794–96 (same); *Ditello*, 974 F.2d at 890 (same).

Although we think this approach is generally appropriate, we believe a recent decision by the Supreme Court provides significant additional guidance in ascertaining the contours of the term "trade or business." *See Commissioner v. Groetzinger*, 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987). In *Groetzinger*, the Court considered the meaning of the phrase "trade or business" as it appears in section 162(a) of the Internal Revenue Code. *See* 26 U.S.C. § 162(a) (1988) (providing for income tax deductions for "ordinary and necessary expenses" paid or incurred "in carrying on any trade or business"). The *Groetzinger* Court explained that, "to be engaged in a trade or business, ... the taxpayer's *primary purpose for engaging in the activity must be for income or profit.* A sporadic activity, a hobby, or an amusement diversion does not qualify." 480 U.S. at 35, 107 S.Ct. at 987 (emphasis added).[7]

We acknowledge that the Court in *Groetzinger* "confined" its construction of the term "trade or business" to the statutory provision

---

**7.** The Court in *Groetzinger* also stated that "to be engaged in a trade or business, the [person] must be involved in the activity with continuity and regularity." 480 U.S. at 35, 107 S.Ct. at 987. The District Court in this case made no determination regarding the factors of "continuity and regularity." It appears that these factors are fulfilled in this case. Double A Farms sold tobacco for eight consecutive years and cattle for seven consecutive years, and it filed income tax forms for eight consecutive years in which it reported those sales and represented to the IRS that its principal business activity was farming. The appellees dispute that Double A Farms' activity was "continuous and regular," however, and the District Court made no findings on the point. Accordingly, we leave this matter for the District Court to consider in the first instance on remand.

at issue in that case, and that the Court "[did] not purport to construe the phrase where it appears in other places." *Id.* at 27 n. 8, 107 S.Ct. at 983 n. 8. Nevertheless, the Court's construction of "trade or business" is the most authoritative pronouncement available, and we therefore rely on it, as has at least one panel of the Seventh Circuit. *See Personnel,* 974 F.2d at 794 ("Although the *Groetzinger* court considered a provision of the tax code, we find its definition helpful in distinguishing trades or businesses [under ERISA] from purely personal activities or investments."). Indeed, the parties have offered no *better* interpretation, and we can imagine none. *But see Ditello,* 974 F.2d at 889–90 (declining to rely on *Groetzinger* because the term "trade or business" has different meanings " 'depending upon the [statutory] provision in which it is used' ") (citation omitted).[8]

As the Court in *Groetzinger* held, the determination of whether the primary purpose of an activity is to earn income or profit, thus making the activity a "trade or business," " 'requires an examination of the facts in each case.' " 480 U.S. at 36, 107 S.Ct. at 988 (quoting *Higgins v. Commissioner,* 312 U.S. 212, 217, 61 S.Ct. 475, 478, 85 L.Ed. 783 (1941)). We read the *Groetzinger* Court to mean that the question of whether an activity is a "trade or business" is one of ultimate fact. *See, e.g., Sorrell v. Commissioner,* 882 F.2d 484, 490 n. 17 (11th Cir.1989) (whether an enterprise is a "trade or business" under section 162(a) is a question of fact); *Faulconer v. Commissioner,* 748 F.2d 890, 895 (4th Cir.1984) (same). The same analytical framework applies to disputes arising under 29 U.S.C. § 1301(b)(1). Thus, the court in *Slotky* held that the "characterization" of an operation as a "trade or business" is a question of fact. 956 F.2d at 1373. We agree.

This conclusion carries important implications for the tasks of both the district court and the court of appeals in cases involving the application of section 1301(b)(1). First, wholly apart from the *facts* at issue in this case, the judgment of the trial court must be reversed and the matter remanded because of the court's erroneous application of a "nexus" test. As the Supreme Court noted in *Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982),

> where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue.... [T]his is elementary.

*Id.* at 292, 102 S.Ct. at 1792.

Second, as Judge Posner observed in *Slotky:*

> Factual disputes are not supposed to be resolved on summary judgment. The purpose of the summary judgment procedure is to determine whether there is a (material) factual dispute, in which event there must be a trial. FED.R.CIV.P. 56. That is the general rule, all right, but it doesn't make much sense in a case in which the only "factual" issue is one of characterization, that is, of application of [a legal standard to] undisputed lay facts, *and* the opponent of summary judgment claims no right to a jury trial. For then both the record and the factfinder are the same in the summary judgment proceedings as they would be in a trial. There is no more evidence to put in and no different trier to evaluate it. When both these conditions are satisfied, the formally "factual" dispute is properly resolved on summary judgment.

956 F.2d at 1373–74.[9] Thus, *if* this case were not infected by legal error, and *if* all of the

---

8. The *Ditello* court's decision to interpret section 1301(b)(1) only by relying on statutory purpose poses problems of its own. Ultimately, the purpose of section 1301(b)(1)—"to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities," *Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. H.F. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir.1987)—does not take a court very far, because the court must still decide if a particular "operation" qualifies as a "trade or business." It is for that reason that we turn to *Groetzinger.*

9. The decisions of the Seventh Circuit in both *Slotky* and *Personnel* go on to suggest that on *summary judgment,* so long as there are no disputed subsidiary material facts, a court of appeals should review, under the *clearly erroneous* standard, a district court's determination that an enterprise is or is not a "trade or business." *See Slotky,* 956 F.2d at 1373; *Personnel,* 974 F.2d at

material facts underlying the ultimate fact of whether the operation at issue rises to the level of a "trade or business" were undisputed, then the case might have been ripe for disposition on summary judgment. If anything, the record in this case favors summary judgment for plaintiffs. But, as we indicate below, the record is not entirely clear on certain points, so we will remand for the District Court to address these issues in the first instance.

Third, where any so-called subsidiary facts *material* to the ultimate question regarding "trade or business" are in dispute, the district court cannot resolve these factual disputes on summary judgment. As we said in *Sherwood v. Washington Post*, 871 F.2d 1144 (D.C.Cir.1989) (per curiam),

> the trial court [is not] free to make critical findings of fact in deciding a motion for summary judgment. In acting on a motion for summary judgment, "[t]he court's function is limited to ascertaining whether any factual issue pertinent to the controversy exists; it does not extend to resolution of any such issue."

*Id.* at 1147 (quoting *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 442 (D.C.Cir. 1972)).

Fourth, because a district court's finding that an enterprise is (or is not) a "trade or business" constitutes a factual determination, that *factual* determination is reviewable after trial only for clear error. *See Swint*, 456 U.S. at 287, 102 S.Ct. at 1789 ("[FED.R.CIV.P.] 52(a) broadly requires that findings of fact not be set aside unless clearly erroneous.... [I]t does not divide findings of fact into those that deal with 'ultimate' and

those that deal with 'subsidiary' facts."); *see also Sorrell*, 882 F.2d at 490 n. 17 (whether an enterprise qualifies as a "trade or business" under section 162(a) is reviewable under the clearly erroneous standard); *Faulconer*, 748 F.2d at 895 (same). However, in those cases in which the district court decides the "trade or business" question on summary judgment, rather than pursuant to FED.R.CIV.P. 52(a), this court must be sure, in conducting its *de novo* review, that the district court has not committed legal error and "has not overlooked or impermissibly resolved any disputed material facts." *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990) (per curiam).

We do not suggest, as the concurring opinion contends, that the court of appeals should review a district court's *factual* findings *de novo*. And there is nothing in *Sherwood* to this effect. Furthermore, we cannot fathom the claim in the concurring opinion that the holding in *Sherwood* is merely *dicta*. The court's subsequent decision in *Abourezk*, which was joined by our concurring colleague, clearly adopts the holding of *Sherwood*, as follows:

> Our inquiry on review is thus two-fold: first, we must be sure that the district court has not overlooked or impermissibly resolved any disputed material facts; and second, we must ensure that the judge correctly applied the relevant law to these undisputed facts.

895 F.2d at 1458. This is the law of the circuit and nothing in our decision today strays from that law. In short, ensuring that disputed facts have not been impermissibly

---

792. In our view, this suggestion is analytically incoherent. Whether we are right in this view, however, does not matter, because the law of this circuit is clearly at odds with that of the Seventh Circuit on this point. *See Sherwood v. Washington Post*, 871 F.2d 1144, 1145 (D.C.Cir.1988) (per curiam). ("The 'clearly erroneous' standard of Rule 52(a) is not applicable in connection with a review of summary judgment.").

Further, we think *Slotky* and *Personnel* inadvertently illustrate an important point about "trade or business" determinations under section 1301(b)(1): because such determinations so often require weighing and balancing numerous competing facts, a great many of these cases are not appropriately resolved on summary judgment.

Indeed, if courts of appeals begin to follow the approach laid out in *Slotky*—*i.e.*, determining on summary judgment review that there are no disputed subsidiary facts and then reviewing the ultimate "trade or business" fact under the clearly erroneous standard—the appellate courts will end up usurping the factfinding function of the trial courts. The decision in *Personnel* is paradigmatic. There, on review of a summary judgment, after insisting that there were no disputed subsidiary facts, the court of appeals slogged through nearly *three pages* of factual analysis to reach a determination that the district court had clearly erred in holding that the disputed enterprise was not a "trade or business." *See Personnel*, 974 F.2d at 794–96.

resolved or overlooked is not the same thing as reviewing *de novo* the "correctness" of a factual finding.

■ In this instance, even if there had been no legal error, the case could not be decided on summary judgment for Double A Farms. The parties on both sides have pointed to evidence in the record that supports their position. On the one hand, the Plans note that among other things, (1) the Adkinses' accountant conceded that the Double A Farms partnership was set up "because [the Adkinses] were doing business," First Deposition of Willis D. Newsome at 27, *reprinted in* A. 129; (2) for seven consecutive years, from 1981 through 1987, Double A Farms reported tobacco and cattle sales of no less than $28,754, with an eight-year total (including 1980) of $346,444; and (3) the Adkinses represented to the IRS during each of those eight years that they were engaged in the business of tobacco and/or cattle farming. On the other hand, Double A Farms contends that, among other things, (1) the partnership was created purely for tax purposes, *see* Second Deposition of Willis D. Newsome at 37–39, *reprinted in* A. 195–97; (2) the tobacco was grown only to maintain the value of the property as an investment, *see id.* at 56–57, *reprinted in* A. 214–15; and (3) the Adkinses purchased the property primarily for recreational purposes, and secondarily, as an investment. *See id.* at 22–23, *reprinted in* A. 180–81; Deposition of Orville Adkins at 68, *reprinted in* A. 157. On this record, we would be inclined to think that summary judgment should have been granted in favor of the plaintiffs. The parties claim to be in disagreement, however, over the precise details of certain of the facts (*e.g.*, the intended size and purpose of the breeding herd, and the continuity and regularity of the alleged businesses) and over the weight to be attributed to those subsidiary facts that are otherwise undisputed. We are not sure what this means in the context of this case, but we are satisfied that, in these circumstances (especially in a case of first impression), the trial court should be left to "find the facts," FED. R.CIV.P. 52(a), or, if there are no material facts in dispute, issue a summary judgment for plaintiffs. In any event, we hold that it was inappropriate for the District Court to grant summary judgment in favor of Double A Farms.[10]

### D. Factors Relevant to the "Trade or Business" Inquiry

This case presents a difficult issue of first impression in this circuit, so we feel that some guidance is due the District Court on remand. In addition, because the parties have raised a number of questions regarding the legal relevance of, and weight to be accorded, to certain facts, we feel that it is appropriate to pause to consider the factors that may be relevant to the "trade or business" inquiry.

■ First, it is not dispositive that the land on which an alleged "trade or business" sits is used partly for recreational purposes, such as hunting. A recreational use may often show nothing more than that the land has a dual purpose. Indeed, counsel for the Adkinses conceded at oral argument that Double A Farms would qualify as a "trade or business" if the facts in this case remained the same except that Double A Farms' cattle

---

10. We find it ironic that the concurring opinion suggests we are attempting to broaden the scope of review of the ultimate issue of fact, when this is precisely the opposite of what we hold. It is even more ironic that, in embracing the position of the Seventh Circuit, the concurring opinion subscribes to a view that would allow the court of appeals to usurp the factfinding functions of the trial court (just as has occurred in the Seventh Circuit). *See* note 9 *supra*. The Seventh Circuit's decisions in *Slotky* and *Personnel* hold that, on summary judgment review, a court of appeals may overturn the trial court's ultimate finding on "trade or business" under the clearly erroneous standard when there are no disputed subsidiary facts. This makes no sense, because on summary judgment there are no "findings" that need be given by the trial court, so there may be nothing for the court of appeals to review under the clearly erroneous standard. The concurring opinion seems to recognize this dilemma, and thus offers the following suggestion: "[I]f a district judge in this sort of case offered no reasons that could be construed as findings, I do not see how a court of appeals would have any recourse but to remand for written findings under Rule 52(a)." Concurring Op. at n. 3. We take this to indicate that our concurring colleague agrees with us that the trial court should find the facts, and that "factfinding" does not occur under Rule 56.

and tobacco operations grossed several million dollars each year and the tobacco was treated in a large processing plant on the Adkinses' land. Therefore, the fact that the land has a recreational use cannot, alone, defeat a finding that an enterprise operating on that land is a "trade or business" within the meaning of section 1301(b)(1). In some circumstances, however, continuing recreational use may serve as *one* indicator leading to a determination that an enterprise is not a trade or business.

■ Second, the District Court must base its determination of a defendant's purpose on something other than a self-serving statement of intention. A defendant's stated declaration that she or he did not intend to engage in a trade or business, without more, is hardly probative of whether an enterprise constitutes a "trade or business." A party must point to objective evidence demonstrating that he or she did not intend to create a business. On the other hand, a defendant's stated intention of forming a "business" *is* highly relevant, because it constitutes a declaration against interest. *Cf.* MCCORMICK ON EVIDENCE 819 (Edward W. Cleary et al. eds., 3d ed. 1984) (declarations against interest are "believed to furnish the safeguard of special trustworthiness").

■ Third, the purpose of an enterprise cannot be determined by referring to the defendant's purported understanding of ERISA and the MPPAA. It is irrelevant that a defendant might have acted differently had he understood the consequences of his actions. As the Ninth Circuit said, in holding the principals of a joint venture personally liable for the joint venture's withdrawal liability,

> the decision to forgo the benefits of incorporation and to establish [the] joint venture was presumptively made for business reasons and for the personal benefit of [defendants]. They ... are responsible for whatever legal consequences attach to their own choice of business organization.

*H.F. Johnson,* 830 F.2d at 1015; *accord Connors v. Ryan's Coal Co., Inc.,* 923 F.2d 1461, 1468 (11th Cir.1991). In imposing withdrawal liability on any "trade or business" under common control with the signatory employer, Congress made no exception for those who did not foresee the potential extent of that liability, either in setting up the "trade or business" or in choosing a particular form for that "trade or business."

■ Fourth, the legal form of the disputed enterprise—be it a "partnership," "corporation," "joint venture," "individual owner" or some other type of organization—is not dispositive of whether the enterprise is a "trade or business." Indeed, the plain language of section 1301(b)(1) makes this clear, for that section extends liability to all commonly controlled "trades or businesses *(whether or not incorporated* )." 29 U.S.C. § 1301(b)(1) (emphasis added). Thus, for example, courts have stated that a partnership, such as Double A Farms, can be a "trade or business" under section 1301(b)(1). *See Ryan's Coal,* 923 F.2d at 1466; *H.F. Johnson,* 830 F.2d at 1015. Of course, the form of organization affects who may be held liable, and the extent to which their assets can be reached. For example, it is black-letter law that "[a]bsent any limitation in the partnership agreement, partners are personally liable for obligations of the partnership." *Id.; see also* UNIF. PARTNERSHIP ACT § 15, 6 U.L.A. 174 (1969). In this case, therefore—as the Adkinses concede—if the District Court finds that Double A Farms constitutes a "trade or business," then the Adkinses are personally liable for the withdrawal liability imposed on Double A Farms.

Finally, as we have already held, there is *no* "economic nexus" requirement that an enterprise must meet in order to qualify as a "trade or business." Indeed, it is not even *relevant,* let alone dispositive, that there is, or is not, an economic nexus between Double A Farms and Incoal. The proper characterization of the Double A Farms partnership must be made with reference to other factors.

## III. CONCLUSION

For the foregoing reasons, we hold that the District Court erred in finding that Double A Farms was not a "trade or business" under 29 U.S.C. § 1301(b)(1). Accordingly, we remand the case to the District Court for

further proceedings consistent with this opinion.

*So Ordered.*

SILBERMAN, Circuit Judge, concurring in the judgment:

I agree with my colleagues that the case should be remanded to the district court. I write separately, however, to set forth what I think is the proper relationship between the nature of the issue before the district court, our scope of review, and the anomaly created by the district court's grant of summary judgment.

As the majority correctly observes, the ultimate issue in the case—whether an enterprise is a "trade or business"—is properly described as a question of fact. The majority also rightly looks to *Commissioner v. Groetzinger*, 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987), which interprets that same phrase under §§ 62(1) and 162(a) of the Internal Revenue Code. The Supreme Court there defined a trade or business as one where: (1) "the taxpayer's *primary purpose* for engaging in the activity must be for income and profit"; and (2) "the taxpayer must be involved in the activity with continuity and regularity." *Id.* at 35, 107 S.Ct. at 987 (emphasis added).[1] That standard requires the district court to make a finding, *inter alia*, of *intent* or *purpose*. And as the Supreme Court has said, "[t]reating issues of intent as factual matters for the trier of fact is commonplace." *Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982). This is true even though the determination of intent—a question of ultimate fact—rests upon other, subsidiary material facts. *Id.* at 287–90, 102 S.Ct. at 1789–91.

Of course, it follows that our standard of review of a district court *finding* on this issue is quite deferential; it is the clearly erroneous test. Courts of Appeals have been admonished by the Supreme Court to be particularly careful when applying that standard not to encroach on the district court's domain.

"In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual questions *de novo*." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Such findings are entitled to deference "even when [they] do not rest on credibility determinations, but are based on physical or documentary evidence or inferences from other facts." *Id.* at 574, 105 S.Ct. at 1511–12.

In this case, however, we do not have before us a district judge's findings under FED.R.CIV.P. 52(a), which are entered after trial. Instead, we have his analysis of the documentary evidence and affidavits in a memorandum accompanying his grant of summary judgment. Both parties below filed motions for summary judgment, and appellants do not challenge the judge's grant of summary judgment as procedurally inappropriate because the material facts were in controversy. Indeed, appellants asserted that "all of the essential facts were undisputed." Appellants' Reply Br. at 2.[2] These include, as far as I can tell, the amount of tobacco sold, the heads of cattle raised, the extent of appellees' involvement in the income producing activity, the recreational uses of the farm, and even appellees' uncontradicted assertion of their essential purpose in maintaining the farm. Appellants only dispute what we regard as the ultimate ques-

---

1. The second factor seems to be almost fully ignored in the majority's opinion.

2. Appellants thought the issue before us was properly characterized as a "mixed question of law" to which "the proper standard of review must be more searching than the standard applied to a pure finding of fact." Appellants' Reply Br. at 2.

tion of fact—whether the farm is a trade or business—which is really a characterization of, or an inference to be drawn from, the subsidiary material facts.

The district judge's memorandum accompanying his grant of summary judgment does discuss, sift, and evaluate those subsidiary facts in such a fashion as to appear very similar to findings entered after trial. We thus are faced with the anomaly that the Seventh Circuit recently encountered.

> Factual disputes are not supposed to be resolved on summary judgment. The purpose of the summary judgment procedure is to determine whether there is a (material) factual dispute, in which event there must be a trial. FED.R.CIV.P. 56. That is the general rule, all right, but it doesn't make much sense in a case in which the only "factual" issue is one of characterization, that is, of application of undisputed lay facts, *and* the opponent of summary judgment claims no right to a jury trial. For then both the record and the factfinder are the same in the summary judgment proceeding as they would be in a trial. There is no more evidence to put in and no different trier to evaluate it. When both these conditions are satisfied, the formally "factual" dispute is properly resolved on summary judgment.

*See Central States, Southeast & Southwest Areas Pension Fund v. Slotky,* 956 F.2d 1369, 1373–74 (7th Cir.1992) (emphasis in original).

The majority thinks Judge Posner's analysis is incoherent; I do not. It certainly cannot be suggested seriously that a busy district judge faced with this sort of situation must require the parties to put on redundant testimonial evidence—to have an uncontested kabuki-like trial. If the judge does not conduct a trial and instead simply sets forth his analysis, characterization, or inferences from the undisputed subsidiary facts as part of the explanation accompanying his grant of summary judgment, our scope of review of the ultimate issue of fact cannot possibly be broadened. It is simply not our role to weigh, sift, and balance those subsidiary facts; it is the district court's job. I agree, therefore, with the Seventh Circuit that no matter how this sort of case comes to us, whether after trial or on a grant of summary judgment, the scope of review (clear error) cannot change.

The majority nevertheless assumes—mistakenly, I believe—that when a summary judgment motion is appealed, review is always *de novo,* even if the ultimate issue, as here, is a question of fact. The authority upon which the majority relies, however, does not deal with this sort of case, so it is not instructive, let alone binding. *Sherwood v. Washington Post,* 871 F.2d 1144 (D.C.Cir. 1989), does say that "[t]he 'clearly erroneous' standard of Rule 52(a) is not applicable in connection with a review of summary judgment." *Id.* at 1145. But *Sherwood's* opening language is *dicta.* In that case summary judgment was granted improperly precisely because genuine issues of orthodox material fact remained. Similarly, the case *Sherwood* relies upon, *Tygrett v. Washington,* 543 F.2d 840 (D.C.Cir.1974), also states that fact findings made on summary judgment "are not really findings of fact" and that "such findings are not protected by the 'clearly erroneous' standard of [Rule] 52(a)." *Id.* at 844 n. 17. Again, the quoted passage is *dicta,* because in *Tygrett* the lower court was reversed for making an error of law.

To be sure, when a district judge grants a Rule 56 motion, he is not required to set forth findings of fact or conclusions of law. This means, of course, as Judge Harris recently reminded us, that the judge is not obliged to say or write anything in support of his decision. *Fairhead v. Deleuw, Cather & Co.,* 817 F.Supp. 153 (D.D.C.1993); FED. R.CIV.P. 52(a).[3] But when the judge does provide an explanation, as did the judge here, we should regard that explanation just as if findings had been entered under Rule 52. After all, the judge could have treated the

---

3. My agreement with Judge Harris is expressed with due respect for the motions panel of this court that directed him to do that which the Federal Rules do not require. The order of the motions panel, because it was unpublished, has no precedential force. However, if a district judge in this sort of case offered no reasons that could be construed as findings, I do not see how a court of appeals would have any recourse but to remand for written findings under Rule 52(a).

parties' submissions as a request for a "paper trial" and then provided Rule 52 findings,[4] which, in context, is not significantly different from what he did. So long as neither party wishes to put on testimonial evidence and to dispute subsidiary material facts, there can be no objection if the judge decides the case as the parties submit it. The case relied upon by the majority, *Sherwood,* allows for this very procedure. "It is true that '[i]n some circumstances cross-motions for summary judgment ... may be treated for purposes of review as a mutual request for trial on [a] stipulated ... record.'" *Sherwood,* 871 F.2d at 1147 n. 4, quoting *Toney v. Bergland,* 645 F.2d 1063, 1066 (D.C.Cir. 1981); *see also Vetter v. Frosch,* 599 F.2d 630 (5th Cir.1979).

Be that as it may, under no circumstances are we entitled to examine the evidence *de novo.* The majority's discussion of the evidence, therefore—including its view that "these factors [of continuity and regularity] are fulfilled in this case," Maj. Op. at 250 n. 7, and that "[o]n this record, we would be inclined to think that summary judgment should have been granted in favor of plaintiffs," *id.* at 253—is not only *dicta,* it is *dicta* that the district judge is entitled to (indeed, under *Anderson,* is obliged to) disregard because it encroaches into his fact-finding domain. The latter observation—that the majority actually would have granted summary judgment for the plaintiffs—seems, moreover, quite inconsistent with its view that summary judgment is inappropriate in such a case.

I concur in the judgment remanding to the district court, however, because I agree with the majority that the district court should not have considered, *as a matter of law,* the lack of economic nexus between the coal company and the farm as a factor to be weighed in determining no liability. The majority goes too far in unequivocally stating that the economic nexus question is always "irrelevant." *Id.* at 249. As the Seventh Circuit found in *Slotky,* using nexus as a factor to suggest liability may prevent owners of trades or businesses from fractionalizing their assets to escape ERISA. *See Slotky,* 956 F.2d at 1374. Still, I agree with the majority's basic legal point that an unrelated trade or business is nonetheless a trade or business under the Act, and, therefore, that the district judge should not have weighed the nexus factor in favor of appellees. I also believe that the judge, on remand, should make his findings explicitly in the context of the *Groetzinger* framework.

Although the district judge was not entirely clear on this point, he may well have believed that appellees' investment in the farm was not a trade or business without regard to the nexus factor. If so, the judge, of course, can make appropriate findings to that effect on remand. I will not offer my own evaluation of the evidence at this stage, but I will say that I do not believe, as does the majority, that the statutory standard the judge is obliged to apply, even with *Groetzinger* as an aid, is all that "plain." And in a close case, of which this may very well be one, a district judge's evaluation of the evidence may not be legitimately reversed.

---

**4.** That might be the most convenient way for district judges to handle these sorts of cases in the future.