TRUSTEES OF the UNITED MINE WORKERS OF AMERICA 1974 PENSION PLAN, et al., Plaintiffs,

v.

OLD MILL MINING COMPANY, et al., Defendants.

Civ. A. No. 93–1001 (CRR).

United States District Court, D. Columbia.

March 25, 1994.

Kathleen M. Dowd and Stacey M. Blumer of UMWA Health & Retirement Funds, Washington, DC, for plaintiffs.

Michael D. Foster and Charles M. Surber, Jr. of Jackson & Kelly, Charleston, WV, Thad S. Huffman of Jackson & Kelly, Washington, DC, for defendant Ronald K. Harden.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is Defendant Ronald K. Harden's Motion to Vacate and Set Aside Default Judgment and to Dismiss for Want of Personal Jurisdiction, and opposition, reply, and sur-reply[1] thereto. Pursuant to Fed.R.Civ.P. 60(b)(4), Defendant Ronald K.

---

1. Also pending before the Court is Plaintiffs' Motion for Leave to Respond to Defendant's Reply. Through this Motion, the plaintiff informs the Court that this response is necessary to address case law cited by Defendant Harden in his Reply. Because this Motion is unopposed and therefore conceded under Local Rule 108(b), and because the Defendant cited caselaw in his Reply that was not in his original Motion to Vacate, the Court shall grant leave to file Plaintiffs Trustees' Response to Defendant's Reply to Defendant's Reply for Defendant's Motion to Vacate and Dismiss ("Defendant's Sur–Reply").

Harden moves the Court to vacate and set aside the Order of Default and Judgment entered by this Court on July 26, 1993, arguing that this Court lacked personal jurisdiction over Mr. Harden. In that Order, the Court entered a judgment of $243,178.35 for Plaintiffs Trustees of the United Mine Workers of America ("UMWA") 1950 and 1974 Pension Plans (the "Plans"), against Defendants Old Mill Mining Company, Inc. ("Old Mill"); Harden Trucking Company, Inc. ("Harden Trucking"); and Ronald K. Harden individually and t/a Harden Construction Company[2] ("Harden").

In light of the pleadings filed, the applicable law, and the entire record herein, the Court shall deny the Defendant's Motion to Vacate and to Dismiss.

## I. *BACKGROUND*

This lawsuit arises from the Plaintiffs' pursuit of delinquent pension payments from a construction venture that took place in the early 1980s. According to his Affidavit, Mr. Harden formed the sole proprietorship of Harden Construction in September, 1981 to work on a single construction project in West Virginia for Itmann Coal Co., and Harden Construction did no work after January, 1982. Affidavit of Ronald K. Harden ¶¶ 2, 3, 7 ("Harden Affidavit"). Harden alleges that in December, 1984, Defendant Old Mill ceased its operations covered under the 1950 UMWA Plan, and that in December, 1986, both Old Mill and Harden Trucking ceased covered operations under the 1974 UMWA Plan.

On May 27, 1987, the Trustees of the United Mine Workers of America 1950 Pension Plan filed a lawsuit against Old Mill, Harden Trucking, and Harden (collectively known as "Employers"), seeking the recovery of delinquent withdrawal liability payments. The defendants in that case challenged the plaintiffs' use of March, 1984 as a withdrawal date for the calculation of withdrawal liability. On August 13, 1990, the 1950 and 1974 Plans

and these defendants signed a Tolling Agreement, which included provisions that Harden Trucking would submit to an audit, and that

> Within sixty (60) days of such notification [of post-audit revised withdrawal liability], the Employers may request review from the Plans. The Plans shall then have the opportunity to respond to the request for review. Within one hundred and eighty (180) days of receiving the notification . . . , the Employers may initiate arbitration. However, the issues raised in the request for review and arbitration shall be limited to (1) the date of the withdrawal, and (2) the propriety of the Plans' determination of the numerator of the withdrawal liability fraction. The Employers' obligations in conjunction with any request for arbitration shall be governed by Section 4221(d) of ERISA. Nothing in this Agreement shall restrict the Plans' rights to recover, pursuant to ERISA, the Employers' withdrawal liability, interest, liquidated damages and attorneys fees if the Employers do not initiate arbitration within the time set out in this paragraph. . . . Without limiting the foregoing, if the Employers do not timely request arbitration, the Plans may immediately commence litigation to enforce any and all of their rights under ERISA.

Tolling Agreement, Plaintiff's Opposition Exhibit A, at ¶ 3.

The parties executed a Dismissal Agreement on September 19, 1987, under which Old Mill consented to submit to an audit to determine its withdrawal liability to the 1950 and 1974 Plans. In a letter dated May 20, 1992, the Plans notified the defendants of their revised withdrawal liability, calculated on the basis of a withdrawal date of December, 1984. None of those defendants requested review nor initiated arbitration proceedings regarding the date of withdrawal liability, nor did they make any payments to the Plans.

On May 17, 1993, the Plaintiffs filed this action. On May 28, 1993, Defendants were

---

**2.** In their Opposition, the plaintiffs explain that they have named Ronald K. Harden, both individually and trading as Harden Construction Company, as a defendant in this action, because ERISA does not relieve persons who operate uninncorporated businesses under common control with signatory employers from personal liability for an employer's withdrawal liability. *See, e.g., Connors v. Calvert Dev. Co.,* 622 F.Supp. 877 (D.D.C.1985).

notified by mail of a status conference scheduled for June 1, 1993. However, Defendants telephoned counsel for the Plaintiffs on May 28, 1993, explaining that they had not yet obtained counsel, and Defendants failed to appear at that status conference. In a letter dated June 4, 1993, Plaintiffs advised Defendants of a second status call scheduled for June 21, 1993, but Defendants did not appear at that conference. Plaintiffs filed an Application for Entry of Default in July 20, 1993, stating that (1) the Defendants were served on June 17, 1993; (2) the Court received proof of service on June 25, 1993; (3) the Defendants' time in which to answer or otherwise respond to the Complaint had expired; and (4) the Defendants failed to enter an appearance. On July 26, 1993, the Court issued an Order of Default and Judgment.

## II. COURT'S JURISDICTION OVER DEFENDANT HARDEN

■ The threshold question before the Court is whether it has jurisdiction over Harden in this case. More specifically, the issue is whether Harden is an employer under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").

Harden asserts that he is not an "employer" under ERISA, and therefore the Plaintiffs may not use ERISA's nationwide service of process provisions. The heart of Harden's argument is that because Harden Construction was out of operation when Old Mill and Harden Trucking withdrew, his sole proprietorship was not a trade or business under common control on that date and is consequently not an "employer" for the purposes of withdrawal liability. Contending that he was out of business well before the date of the alleged earliest withdrawal, he reasons that he dropped out of the controlled group in time to avoid liability.

■ The Court holds that because Harden qualifies as an employer under ERISA, the Court has jurisdiction and its entry of default judgment against Harden is valid. Once an employer withdraws from a multiemployer pension plan, Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b), governs the withdrawal liability of other enterprises. This statute looks to two facets of an enterprise in making this assessment, and any entity that is (1) a "trade or business" and (2) under "common control" with the employer who withdraws is jointly and severally liable for the principal employer's withdrawal liability. *Connors v. Incoal, Inc.*, 995 F.2d 245, 249 (D.C.Cir.1993) (*"Incoal II"*). This statute holds unincorporated enterprises to the same standard of employer withdrawal liability as corporate enterprises.

■ Because the Defendant meets both standards, Harden cannot escape his withdrawal liability. In his Motion to Vacate, Harden states that he does not dispute control of Old Mill and Harden Trucking. Because Harden disobeyed the MPPAA's requirements to arbitrate disputes of withdrawal liability through arbitration, in that he failed to raise in arbitration his defense that he was no longer in business when Old Mill and Harden Trucking withdrew, he may not dispute its liability before this Court. The governing federal law and private agreements to which he consented clearly bind Harden to initiate arbitration for the dispute at hand. According to § 4221 of ERISA, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration," and "[i]f no arbitration proceeding has been initiated ..., the amounts demanded ... shall be due and owing...." 29 U.S.C. §§ 1401(a)(1), 1401(b)(1).[3] Here, the 1990 Tolling Agreement also informed Harden of his rights to contest the Plans' determinations, specifically detailing the timeframe to initiate arbitration, and specifically incorporating § 4221 as its benchmark. In addition, the Plans sent a letter dated May 20, 1992, to all Defendants, notifying them of their right to initiate arbitration to challenge their revised withdrawal liability.

---

**3.** 29 U.S.C. §§ 1381–99 cover the full range of employer withdrawal liability, with section titles such as "Determination and Collection of Liability; Notification of Employer" and "Reduction or Waiver of Complete Withdrawal Liability; Procedures and Standards Applicable."

Despite the statute, the Tolling Agreement, and the letter addressed to Harden, Harden elected not to initiate arbitration on any related issue. There is no question that, despite repeated notice, Harden did not arbitrate his dispute about his status as an "employer" under § 1401(a)(1). Furthermore, Defendant Harden cites no case to support his proposition that "the issue of whether an entity is an employer under § 4001 of ERISA is not within the scope of arbitratable [sic] issues as set forth in § 4221 of ERISA." Defendant's Reply, at 3. As the Plaintiffs correctly point out, Harden improperly relies on *Incoal II* for this assertion. That case stated that the employer did not waive its right to contest its withdrawal liability, where the employer sought to raise the defense that it was not a trade or business under Section 1301(b)(1) of ERISA. *Incoal II*, 995 F.2d at 249 n. 6. However, the facts before this Court are readily distinguishable from *Incoal II*, which focused on whether Double A Farms could qualify as a "trade or business." Here, the Defendant openly concedes that, at one point in time, his proprietorship was a trade or business in common control with Old Mill. Thus, *Incoal II* and *Central States, Southeast and Southwest Pension Fund v. Personnel, Inc.*, 974 F.2d 789 (7th Cir.1992), on which Harden also relies, are inapposite, because those cases concerned defendants arguing that at no point in time were they trades or businesses.

With respect to the issue of exhaustion of arbitration remedies, the caselaw cuts against the Defendant's assertion that he may challenge the withdrawal date of December, 1984. In a similar case, *Connors v. S & S Coal Co.*, 92–1116 (August 6, 1993) (Lamberth, J.), Judge Lamberth adopted the Fourth Circuit's approach to this sort of issue, stating "that § 1401(a)(1) even precludes an employer's defense that it was not 'an employer' under § 1401(a)(1) where the alleged employer did not arbitrate that dispute." In the instant case, the Court does not even need to go as far as *Connors v. S & S Coal*—the Defendant admits that he was an employer, and merely argues the timing of the termination of this status. Even more specifically, the Third Circuit rejected the Defendant's approach by stating that "where

the party against which withdrawal liability is being asserted was certainly part of the controlled group of an employer subject to MPPAA at some point in time, and where the issues in dispute fall within the purview of MPPAA provisions that are explicitly designated for arbitration, the Act's dispute resolution procedures must be followed." *Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1247 (3d Cir.1987). As a result, Harden's belated attempt to refute his withdrawal liability is precluded.

Harden also relies heavily on *Connors v. Incoal, Inc.*, 699 F.Supp. 3 (D.D.C.1988) ("*Incoal I*"), aff'd 907 F.2d 1227 (D.C.Cir.1990), in arguing that he should not be held liable because he was not conducting a trade or business in common control with the other employers. The Court does not find this case persuasive, in that *Incoal I* also examined whether an enterprise ever actually attained "employer" status, as opposed to inquiring at what point in time an entity terminated that status. Such issues of timing are clearly within the province of an arbitrator, and Harden should not be allowed to benefit by flagrantly and repeatedly ignoring his commitment to arbitrate this issue over a period of months and years.

The broader policy implications of ERISA, pensions, and arbitration further support the Plaintiffs' arguments. As our Circuit has emphasized, ERISA and the MPPAA were designed to prevent employers from abandoning financially fragile pension plans, and to preserve judicial economy in handling disputes:

> At the heart of the MPPAA's regime are provisions for informal, expeditious resolution of withdrawal liability disputes.... Thus, Congress' directive is clear. *Any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated.

*I.A.M. Nat'l Pension Fund Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 416–17 (D.C.Cir.1987). This framework is designed to prevent sudden departures from pension funds that would leave pension plans underfunded and strain the resources of the Pension Benefit Guaranty Corporation.

Funding the retirement of laborers is not a casual game to see who will pick up the dinner tab—Congress crafted rules to make sure that pensioners would not be left without support. Harden knew about the issue of withdrawal liability and sat on his hands in 1987, when he executed a Dismissal Agreement; in 1990, when he signed a Tolling Agreement; and in May, 1992, when he received notification from the Plans of his revised withdrawal liability. Where Congress establishes a well-designed scheme to handle such disputes promptly and efficiently, no defendant has a right to blithely waive this mandatory arbitration process and demand that an overloaded court system start from ground zero to determine the existence and extent of liability.

### III. *DEFENDANT HARDEN WAS PROPERLY SERVED UNDER ERISA'S NATIONWIDE SERVICE–OF–PROCESS CLAUSE.*

As a corollary to his claim that he was not an "employer" under ERISA, Harden argues that he had insufficient contacts with the District of Columbia. He maintains that his business was conducted exclusively within West Virginia, from September 1981 through January, 1982. Furthermore, he contends that Harden Construction conducted no business outside of West Virginia and that he had no contacts with this District, so that the default judgment entered against him must be void. *See* D.C.Code § 13–423.

The Defendant is correct in stating that the controlling provision of ERISA on this issue relieves a defendant who is not an "employer" from ERISA's nationwide service of process, and without minimum contacts is not subject to suit "in the district where the plan is administered ..." 29 U.S.C. § 1451(d). However, because Harden is incorrect in contending that he was not an "employer" under ERISA, his claim that he is not subject to ERISA's service of process provisions must fail. Under Section 502(e)(2) of ERISA, "process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Thus, Harden's claim regarding insufficient contacts is without merit.

### IV. *BECAUSE THIS COURT DOES HAVE JURISDICTION OVER HARDEN, THERE ARE NO SPECIAL CIRCUMSTANCES WHICH WARRANT THE DEFAULT JUDGMENT TO BE SET ASIDE.*

■ To prevail in a motion to set aside a judgment, the moving part must demonstrate exceptional or extraordinary circumstances. *See Lincoln Savings Bank v. Carmelita Dev. Corp.,* 88 F.R.D. 648, 651 (D.P.R.1980). Apart from his unsuccessful jurisdictional challenge, the Defendant presents no allegation or other indication of any exceptional or extraordinary reason for his delay in responding to various notices to bring any dispute to arbitration. Furthermore, despite twice being notified by this Court to appear for status conferences, the defendant chose not to appear. Therefore, the Court must find that there are no extraordinary circumstances that would warrant the Court to grant Defendant Harden's Motion to Vacate.

### V. *CONCLUSION*

In short, the Court finds that Defendant Harden has failed to prove that this Court lacks jurisdiction over him, and that he is not entitled to vacate and set aside the Court's previous default judgment. Accordingly, his Motion must be denied.

The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

### *ORDER*

Upon consideration of Defendant Ronald K. Harden's Motion to Vacate and Set Aside Default Judgment and to Dismiss for Want of Personal Jurisdiction, the papers submitted by the parties, the record herein, the applicable law, and for the reasons expressed in this Court's Opinion of even date herewith, it is, by the Court, this 25 day of March, 1994,

ORDERED that Plaintiffs' Motion for Leave to Respond to Defendant's Reply shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Defendant's Motion to Vacate and Dismiss shall be, and hereby is, DENIED.