MURPHY BROTHERS CHEVROLET COMPANY, Inc., Appellant,

v.

EAST OAKLAND AUTO AUCTION, Appellee.

No. 5995.

Court of Civil Appeals of Texas.

El Paso.

Jan. 22, 1969.

Rehearing Denied Feb. 12, 1969.

Thornton & Thornton, Olney, for appellant.

Legg, Saxe & Baskin, Reagan H. Legg, Midland, for appellee.

## OPINION

FRASER, Chief Justice.

As stated in the brief of appellant, this action is a consolidated action brought originally in two lawsuits, each by East Oakland Auto Auction, a California corporation, against appellant herein, Norman Cadle, and Vincent Murphy Chevrolet Company, Inc., with an interpleader taken against E. R. Broom. Uncontested judgment was taken against defendants Norman Cadle and E. R. Broom by appellant and Vincent Murphy Chevrolet Company, Inc., and uncontested judgment was taken against Norman Cadle by East Oakland Auto Auction, and no appeal from such judgment has been perfected. Further, judgment was taken by East Oakland Auto Auction against Vincent Murphy Chevrolet Company, Inc. and no appeal from such judgment has been perfected, nor is this appeal in any manner concerned with the said Norman Cadle, E. R. Broom or Vincent Murphy Chevrolet Company, Inc., or any of their rights.

At the same time that the above judgments were taken, judgment was rendered upon the motion of the appellee for summary judgment against the appellant herein, Murphy Brothers Chevrolet Company, Inc. Such judgment was rendered after the filing of depositions and affidavits by both representatives of appellant and appellee, and upon hearing by the Honorable Perry Pickett, Distict Judge of the 147th Judicial District of Midland County, Texas. It is from this summary judgment that this appeal is taken.

The facts of the case are as follows: Some time on or about the 13th day of November, 1963, Norman Cadle contacted W. V. (Vincent) Murphy, President of Murphy Brothers Chevrolet Company, Inc., a Texas corporation, appellant, and also President of Vincent Murphy Chevrolet Company, Inc., a Texas corporation. The said Norman Cadle requested financing for the purchase of five certain Cadillac automobiles, which the said Cadle wished to purchase from E. R. Broom. After a discussion it was agreed that such financing would be done and that open titles would be held to such automobiles until Cadle sold the cars, at which time the money from the sale of such automobiles would be received by the said Vincent Murphy Chevrolet Company, Inc., after the receipt of which such money would be applied against the amount owed by the said Cadle on said automobiles. When the full amount of such advancement, plus financing costs, were repaid, then any amounts received by Cadle over and above such payment would be delivered to him and to his credit. Thereafter the said E. R. Broom brought the title to each of such automobiles to Vincent Murphy Chevrolet Company, Inc. at its office in Archer City, Texas, and the said E. R. Broom received a check for $15,000.00 which was duly negotiated and honored. On or about that same day Cadle came to Archer City and signed a chattel mortgage and note securing the payment of such $15,000.00 amount payable to Murphy Brothers Chevrolet Company, Inc., and said chattel mortgage being made cov-

ering the five Cadillac automobiles. A copy of the chattel mortgage and note are attached to the affidavit of W. V. Murphy filed in this cause and on pages 34 through 37 of the Statement of Facts.

Although appellant has stated the nature of this case, appellee believes the following further facts should be considered. These suits were originally filed by appellee against appellant, Vincent Murphy Chevrolet Company, Inc. and Norman Cadle, for the recovery of damages in the amounts ($3,150.00 and $3,065.00) which appellee paid in order to be able to deliver good and valid titles to those who purchased two Cadillac automobiles from appellee at auction. It is uncontroverted that the Cadillacs were stolen cars. The Cadillac automobiles were brought to appellee by Norman Cadle, who represented himself to be an agent for Murphy Brothers Chevrolet Company, Inc. of Archer City, Texas. The cars were sold by appellee at auction in the usual course of business and the transaction was handled in the usual and ordinary manner. This was done, and two cashier's checks in the respective amounts of $3,000.00 and $3,065.00 were, by instruction of "a Mr. Murphy" (who could only have been Dale Murphy according to the testimony of Vincent Murphy) transmitted to and made payable to The First State Bank of Archer City, Texas. It is uncontroverted that these two cashier's checks were endorsed by the bank as payee, with the further endorsement thereon of "Murphy Bros. Chevrolet Co., Inc.".

Appellee is a California corporation, and acts as a clearing house for new and used car dealers to wholesale automobiles. Appellee also does business as "Oakland Auto Auction". Automobiles handled and auctioned by appellee are delivered to appellee by the consignor and sold on a commission basis. Appellee warrants the title to be good to the man who purchases the automobile at auction, and it is an auction for automobile dealers only. David O. Martindale, one of the deponents, is Vice-President of appellee. Vincent Murphy is President of Murphy Brothers Chevrolet Company, Inc., appellant herein, and also had been President of Vincent Brothers Chevrolet Company, Inc., and manager of the business. Vincent Murphy testified in answer to a question as to "what happened to" Vincent Murphy Chevrolet Company, Inc., that Murphy Brothers Chevrolet Company, Inc. bought out Vincent Murphy Chevrolet Company, Inc. prior to November, 1963 (the date of these transactions). He also testified that there is no longer a business known as Vincent Murphy Chevrolet Company, Inc., and his testimony substantiates the conclusion that Murphy Brothers Chevrolet Company, Inc. is the owner and successor to that business, and that Vincent Murphy Chevrolet Company, Inc. no longer existed after the transfer.

Appellant presents two points of error, which are as follows:

*"POINT NO. I:*

"The trial Court erred in granting a summary judgment to the plaintiff and against the defendant Murphy Brothers Chevrolet Company, Inc., and due to the fact that there is a fact issue as to whether or not Norman Cadle was an express or implied agent of said defendant, Murphy Brothers Chevrolet Company, Inc.

*"POINT NO. II:*

"The trial Court erred in granting plaintiff's motion for summary judgment against the defendant, Murphy Brothers Chevrolet Company, Inc., and due to the fact that there was a question of fact or a question of interpretation of the facts involving whether or not Norman Cadle had ostensible or apparent authority to deal with plaintiff as agent for Murphy Brothers Chevrolet Company, Inc."

It is our opinion that the case should be affirmed for the following reasons, and we shall treat the two points of error together.

■ It is uncontroverted that the two Cadillacs involved (and for which appellee had to pay) were stolen. The open ti-

tle papers were delivered to appellant. It is uncontroverted that the affidavit of Vincent Murphy states that Dale Murphy, an officer of appellant company, was the one who agreed to do business with Cadle; that said Dale Murphy never was an officer in the Vincent Murphy Chevrolet Company, Inc., but he was the Vice President and Manager of the appellant. It is further uncontroverted that the two cashier's checks, as stated above, were sent to the Archer City bank and credited to the account of appellant. It is also uncontroverted that appellee was required to pay the sum of $3,150.00 to make good the title to the purchaser to whom appellee had sold the car, and that appellee paid appellant $3,065.00 for the other Cadillac in question. It is further uncontroverted that it was appellant, and not the Vincent Murphy Chevrolet Company, who would furnish the money for the purchase of these automobiles, and that such company would hold the open title to such automobiles until they were sold, at which time the company would receive the money which Cadle received in connection with the sale of the automobiles and the money would then be applied against the amount owed said company and which had been advanced to Cadle for the purchase of the automobiles, and that when the full amount had been repaid, then any amounts received by Cadle for the sale of such automobiles was to be paid to him for his credit. It is uncontroverted that the automobiles were purchased and the money paid to E. R. Broom by appellant and the titles delivered to appellant. It is uncontroverted that Norman Cadle came to Archer City and signed a chattel mortgage and note in the sum of $15,000.00 for the purchase price of these two, and three other, Cadillacs. In its own brief, appellant stated:

"Appellant Murphy Brothers Chevrolet Company, Inc., denies at all times any express offer to give the alleged agent, Cadle, authority to act for it in connection with such automobile, and in fact states that it was agent for the said Ca-

dle in transferring title to such automobiles and after the sale of same."

This admission does away with the "separate entity" argument of appellant and exposes appellant's participation in the title documents in its capacity of warrantor of title and maker of the indemnity; in other words, appellant obligated itself to protect its interest, either as principal or agent, and is therefore jointly and severally liable to appellee. It is nowhere controverted that Cadle told appellee's vice president that he was actually working for appellant, and that appellant owned the automobiles in question and that he, Cadle, was authorized to sell the automobiles for appellant. There is no suggestion or indication that Cadle represented to appellee that appellant was only the financing agent and there is no information that anyone else did so. By way of review, it is uncontroverted that it was appellant who had an interest to protect because it had advanced the money. The entire transaction was entered into and carried out by appellant's employees and officers, including the preparation of the title documents. Appellant received and deposited to its own account the money paid by appellee for the two cars. All things of value inuring from this transaction, therefore, belonged to and went to appellant, and we find no fact issue to substantiate the "separate entity" issue or argument advanced by appellant to the effect that liabilities and obligations belonged to the Vincent Murphy Chevrolet Company, Inc. and not to appellant. It is true that two documents were signed by Vincent Murphy Chevrolet Company, but they were signed by a notary public who did not work for them, but was an employee of appellant. In other words, all the people who were signators of this document were members or employees of appellant. In any event, appellant would have to be considered as a joint adventurer with the Vincent Murphy Chevrolet Company, and if this be true appellant is still liable to appellee as a co-adventurer. It has long been held that a co-adventurer is equally liable with his partner. Bond-Reed Hard-

ware Co., et al. v. Walsh, 193 S.W. 1148 (Tex.Civ.App., 1917); Eastwood Model Market v. State, 359 S.W.2d 294 (Tex.Civ. App., 1962); affirmed 365 S.W.2d 781; Landa v. Whitfield, 131 S.W.2d 310 (Tex. Civ.App., err. ref.). We should like to point out again that the documentary evidence is un-controverted that the money paid to Broom for the cars was appellant's; the office which dealt with Cadle and Broom was appellant's; and the conversations conducted between appellee's representatives and Archer City were with appellant; there was no office for Vincent Murphy Chevrolet Company, Inc. (in the deposition of Vincent Murphy, his testimony is uncontroverted to the effect that no company bearing his name had been in existence since the formation of Murphy Brothers Chevrolet Company, Inc., of which he became President. He further testified in said deposition that Dale Murphy was never an officer of Vincent Murphy Chevrolet, Inc., although it was Dale Murphy who agreed with Cadle to handle the cars). It is uncontroverted that Mr. Vincent Murphy testified in his deposition that there was no reason for the title to these automobiles ever being taken in the name of Vincent Murphy Chevrolet Company and assigned by such company, instead of the Murphy Brothers Chevrolet Company, and that he further said he had nothing to do with this transaction. This rule is fully discussed by the United States Supreme Court in the case of State, et al., v. Lone Star Gas Co., 86 S.W.2d 484 (Austin, Tex.Civ.App.); ref., 304 U.S. 224, 58 S.Ct. 883, 1051, 82 L.Ed. 1304. The court there held that the rule is well settled that courts will look through the forms to the realities of the relationship between two or more corporations to determine whether each is a separate entity or corporation, or what their relationship might be. The court specifically stated: "The fact that separate corporate entities were formed which represent different departments of the integrated but single business enterprise does not affect the question, because the court must look beyond the corporate form to the purpose of the unified organization and to the officials who are identified with that purpose." In Continental Supply Co. v. Forrest E. Gilmore Co., 55 S.W.2d 622 (Amarillo, Tex.Civ.App., 1932, err. dism.), the court sets out the rule as follows: "Upon ascertainment of all the facts, it is the prerogative of the court and not the jury to look through the forms to the substance of the relations existing between the corporations" (citing cases). This has been our opinion of the law all along, and makes this controversy amenable to the summary judgment provisions. In American Petroleum Exchange, Inc. v. Lord, 399 S.W.2d 213 (Tex.Civ.App., err. ref., n. r. e.), the court stated as follows:

> "At all material times, and up to the time of the trial below, Major * * * treated the corporation as his alter ego. The corporation did not exist except as the shadow of his personality. The state of the record is such as entitled the trial court, *as a matter of law*, to disregard the corporate fiction and to declare the liability of both Major and/or the American Petroleum Exchange, Inc., according to the actual facts." (Emphasis ours).

We should like to cite Eppenauer v. Davis, 272 S.W.2d 934 (El Paso, Tex.Civ.App., 1954, err. ref. n. r. e.), where the court holds that it is well settled that an agent who does not disclose the facts of his agency is liable in the same manner and to the same extent as though he were the real principal in interest. Therefore, it matters not which of these parties was the agent and which was the principal. In the case of Merchants' & Planters' Nat. Bank of Mt. Vernon v. Jones, 173 S.W. 606 (Tex. Civ.App., 1915, n. w. h.), the court holds that when an agent makes, endorses or accepts a negotiable instrument in his own name, he is personally liable thereon. It is uncontroverted here that the drafts were assigned to and cashed by appellant. Other cases have held to the same effect.

We should like to point out again that appellant's points must be overruled be-

cause a determination of who was the agent in no way determines the liability, and the further fact that appellant had an interest to protect and did protect it by receiving and cashing the drafts.

We are mindful that we are bound to consider this case under the rules of summary judgment as enunciated in Gulbenkian v. Penn, 151 Tex. 112, 252 S.W.2d 929, and the many cases following and further emphasizing the rules as laid down in said case. But giving appellant every right to which he is entitled under the Texas Rules of Civil Procedure governing summary judgment (Rule 166–A(c) etc.), we cannot find any fact question of material stature to support appellant's position. There is a complete, uncontroverted structure of documentary testimony clearly showing that appellant is liable, and that the trial court reached the correct conclusion in his decision. Further, as stated, we do not believe that the points of error relating to agency, as raised by the appellant could in any way relieve appellant of its liability in view of the record as set out.

Therefore, appellant's points are overruled and the decision of the trial court affirmed.