**TRUSTEES OF the PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Plaintiffs**

v.

**MAR–LEN, INC., Constructionistics, Inc. and Blackwell & Blackwell Company, Defendants.**

Nos. 1:93–CV–550, 1:93–CV–598.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 12, 1994.

Louis P. Malone III, O'Donoghue & O'Donoghue, Washington, DC and Stephen E. Price, Freedman Hull Mathews & Price, Houston, TX, for plaintiffs.

Kerwin B. Stone, Moore Landrey Garth Jones Burmeister & Hulett and Susan Jennifer Oliver, Benckenstein & Oxford, Beaumont, TX, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is the Plaintiffs' Motion for Summary Judgment on Counts I and IV of its First Amended Complaint. In Count I, plaintiffs ask this court to enforce an arbitration award of withdrawal liability against defendant Mar–Len, Inc. ("Mar–Len"). Count IV alleges that defendants, Mar–Len, Constructionistics, Inc. ("Constructionistics"), and Blackwell & Blackwell Company ("Blackwell & Blackwell"), operated as a single business enterprise in violation of Texas law. Plaintiffs also seek attorneys' fees and costs.

## ·I. FACTS AND PROCEDURAL HISTORY

The Trustees of the Plumbers and Pipefitters National Pension Fund, plaintiffs, are trustees of a multi-employer benefit plan defined under 29 U.S.C. § 1002(37) of ERISA. Defendant, Mar–Len, is a Texas Corporation that operates as a contractor or subcontractor in the construction industry. Mar–Len was bound to the UA Local 195 for several years under its collective bargaining agreement. The agreement expired in 1987 and subsequent negotiations on a new agreement broke down. Mar–Len made its last payment to this multiemployer Pension Fund on December 1, 1988. At the end of the agreement in 1987, the Pension Fund had vested unfunded benefits as defined by ERISA. This pension fund subsequently merged with the Plumbers' and Pipefitters' National Pension Fund.

The President of Mar–Len is Leonard Malinowsky. His daughter, Ann Blackwell, performed various consulting services for Mar–Len since 1986. Ms. Blackwell, a rather industrious individual, also continues to act as the President and majority shareholder of another defendant, Constructionistics. Constructionistics, a Texas Corporation, provided equipment and machinery to Mar–Len for its daily operations. However, neither Mar–Len nor Constructionistics kept recorded entries of the "rented" equipment or machinery.

Ann Blackwell is also a partner in defendant Blackwell & Blackwell with her son. According to depositions and exhibits, no recorded transactions of equipment rental costs existed between Mar–Len and Blackwell & Blackwell. Depositions further indicated that Mar–Len simply agreed orally to pay Constructionistics and Blackwell & Blackwell when it was financially able to do so.

On October 5, 1990, plaintiffs notified Mar–Len that the company owed withdrawal liability of $329,285 because of its withdrawal from the Local Pension Fund. In accordance with 29 U.S.C. § 1401(a), the dispute over this assessment of withdrawal liability

was submitted to arbitration. An arbitration hearing was conducted on January 22, 1992. At this hearing, Ann Blackwell acted as the representative for Mar–Len. She also represented the company at subsequent judicial hearings before the Honorable Richard Schell, United States District Judge for the Eastern District of Texas.

On September 1, 1992, the arbitrator ruled that Mar–Len was obligated to contribute to the Pension Fund. However, the arbitrator held that the amount of contribution was incorrect and ordered the plaintiffs to recalculate the amount owed. On October 22, 1992, the plaintiffs notified defendant Mar–Len that the new amount of withdrawal liability was $223,565. Mar–Len objected to this recalculation and another arbitration hearing was set for April 7, 1993.

Prior to the hearing on the recalculation of withdrawal liability, Mar–Len argued that it had been subsequently released from liability because of certain checks cashed by the local pension fund that stated "in full and final payment of all debts owed."

Next, on February 1, 1993, Mar–Len's Board of Directors (Leonard Malinowsky and his wife Marion) adopted a series of resolutions "reacknowledging" certain debts to Constructionistics and Blackwell & Blackwell. To pay these debts, Mar–Len executed various promissory notes and pledges of real and personal property as security for these debts. No appraisals of these properties were taken. Mar–Len then transferred virtually all of its assets, including future receivables, to the other defendants.

On April 2, 1993, Mar–Len informed the arbitrator that the April 7, hearing was unnecessary and requested a ruling. On October 25, 1993, the arbitrator ruled in favor of the plaintiffs and held Mar–Len responsible for $223,565 in withdrawal liability. The Trustees of the Plumbers and Pipefitters National Pension Fund then filed a claim in this court to enforce the arbitrator's ruling and to grant further relief under Federal and State law grounds. The complaint alleged violations under an alter ego theory, the single business enterprise theory and fraudulent conveyances.

Before this court is Plaintiffs' motion for summary judgment on Count I and Count IV of plaintiffs' first amended complaint.[1] For the reasons stated below, this court confirms the arbitrator's award in all respects and grants Plaintiffs' Motion for Summary Judgment on Count I. Plaintiffs' motion under Count IV is denied due to the expressly preemptive language of 29 U.S.C. § 1301(b)(1). However, on its on motion, this court grants summary judgment pursuant to 29 U.S.C. § 1301(b)(1), finding defendants, Constructionistics and Blackwell & Blackwell, jointly and severally liable as companies that exercised common control over Mar–Len. Plaintiffs are also awarded reasonable attorneys' fees and costs.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[2] *Celotex,* 477 U.S. at

---

**1.** Count I asked for enforcement of the arbitration award and Count IV alleged violations of the single business enterprise theory of liability.

**2.** A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at

2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id., See also, Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992).

323, 106 S.Ct. at 2553; *Topalian v. Ehrman,* 954 F.2d 1125, 1131–32 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Once the movant demonstrates that the case presents no material fact issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts that show that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); *see also Topalian,* 954 F.2d at 1131.

Genuine issues of material fact are not disputed and summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for a non-moving party...." *Leonard v. Dixie Well Service Supply, Inc.,* 828 F.2d 291, 293–94 (5th Cir.1987). It is important to note that "one of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553.

In the present case, parties submitted briefs in support of and in opposition to the plaintiffs' motion for summary judgment. Furthermore, an August 22, 1994 hearing was held to further clarify any issues before the court. The plaintiffs duly informed this court of the basis for its summary judgment motion and identified portions of the record which it believed demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553.

In response to this motion, the defendants failed to show *specific* facts that created triable issues. The non-moving party must go beyond the pleadings and, through affidavits, depositions, interrogatories, and admissions, show that a material fact question exists. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. According to the Supreme Court,

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Credibility determinations, however, are not within the province of the District Courts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Id.; Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994).

## III. DISCUSSION

### A. Enforcement of the Arbitration Award

Plaintiffs ask this court to grant summary judgment on Count I to enforce an arbitration award against defendant Mar–Len. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Section 4221 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1401, governs the disposition of Count I. (MPPAA is codified as amended in scattered sections of 5, 26, 29 U.S.C., 1988 & Supp. IV 1992). 29 U.S.C. Section 1401(a)(1) requires that disputes between an employer and a plan sponsor of a multiemployer pension plan (as defined by sections 1381–1399) be resolved through arbitration. After arbitration, section 1401(b)

permits judicial review of an action to "enforce, vacate or modify the arbitrator's award." 29 U.S.C. § 1401(b). The MPPAA vested in this court exclusive jurisdiction over disputes concerning withdrawal liability.[3]

■ In reviewing the arbitrator's decision, findings of fact shall be presumed correct unless rebutted by a clear preponderance of the evidence. 29 U.S.C. § 1401(c). Courts reviewing arbitration awards consistently uphold the arbitrator's factual findings under the "presumption of correctness" explained in Section 1401(c). *See* 29 U.S.C. § 1401(c). The statute adheres to the general principle that "[j]udicial review of arbitration awards is extremely limited; courts should defer to the arbitrators' resolution of the dispute whenever possible." *Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1282 (5th Cir.1994); *Anderman/Smith Co. v. Tenn. Gas Pipeline Co.,* 918 F.2d 1215, 1218 (5th Cir.1990), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 972 (1991). *See also Chicago Truck Drivers Pension Fund v. Louis Zahn Drug Co.,* 890 F.2d 1405, 1406 (7th Cir.1989).

■ The Fifth Circuit has yet to determine a clear standard of review for an arbitrator's conclusions of law. However, all other circuits that considered this question found that arbitration decisions on matters of law in MPPAA withdrawal disputes are reviewed *de novo. See Bowers v. Andrew Weir Shipping,* 27 F.3d 800, (2d Cir.1994); *Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan,* 3 F.3d 994, 999 (7th Cir.1993), *cert. granted in part,* —— U.S. ——, 114 S.Ct. 2736, 129 L.Ed.2d 858 (1994); *Crown Cork & Seal Co., Inc. v. Central States S.E. & S.W. Areas Pension Fund,* 982 F.2d 857, 860 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2961, 125 L.Ed.2d 662 (1993);

*CMSH Co., Inc. v. Carpenters Trust Fund for N. Cal.,* 963 F.2d 238, 240 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 185, 121 L.Ed.2d 130 (1992); *Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mechanical Inc.,* 909 F.2d 1379, 1386 (10th Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991); *Union Asphalts & Roadoils, Inc. v. MO–KAN Teamsters Pension Fund,* 857 F.2d 1230, 1233 (8th Cir.1988), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1748, 104 L.Ed.2d 185 (1989); *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.,* 727 F.2d 1204, 1207 n. 7 (D.C.Cir.1984); *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund,* 718 F.2d 628, 641 (4th Cir. 1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). This court finds no apparent reason to question the wisdom of the above circuit courts.

Sections 1381 through 1399 set forth the assignments and calculations of withdrawal liability. 29 U.S.C. §§ 1381–1399. All entities under common control with a contributing employer are treated as a single employer. 29 U.S.C. § 1301(b)(1). The pension plan sponsor then calculates the initial liability and notifies the employer. 29 U.S.C. § 1399(b)(1). The employer may challenge this liability determination and force an arbitration of the disputed withdrawal liability. 29 U.S.C. § 1401(a)(1).

■ The express language of the statute provides any dispute between an employer and a plan sponsor shall be resolved through arbitration. 29 U.S.C. § 1401(a)(1) (emphasis added); *see also Flying Tiger Line v. Teamsters Pension Trust Fund,* 830 F.2d 1241, 1247 (3d Cir.1987). Congress specifically created a mandatory arbitration procedure whereby disputes over withdrawal liability would be settled. It would be contrary

---

**3.** Sections 1451(a) and (c) provide in relevant part:

**§ 1451 Civil Actions**
**(a) Persons entitled to maintain actions.** (1) A plan fiduciary ... who is adversely affected by the act or omission of any party under this subtitle [29 U.S.C. §§ 1381 et seq.] with respect to a multiemployer plan ... may bring an action for appropriate legal or equitable relief, or both.

**(c) Jurisdiction of the Federal and State Courts.** The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.

to the legislative intent to allow parties to selectively bring what they considered to be factual claims to an arbitrator, thereby leaving mixed questions of law and fact to be decided by courts. Consequently, this court agrees with the line of cases holding that questions of statutory interpretation are not excepted from arbitration under MPPAA. *See Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502, 504 & n. 3 (9th Cir.1987); *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415 (D.C.Cir.1987).

■ In response to the plaintiffs' motion for summary judgment on Count I, the defendant, Mar–Len, attempts to dispute the facts found by the arbitrator simply by submitting affidavits. These affidavits present no factual issues that would preclude a summary judgment on Count I. The arbitrator already determined the necessary factual issues. As such, a defendant must come forward with a clear preponderance of evidence to avoid summary judgment on prior fact findings of the arbitrator. 29 U.S.C. § 1401(c). In this case, defendant, Mar–Len, simply declares that facts are in dispute. Since the arbitrator already found the facts in question to be true, merely restating their lack of veracity is not enough to meet the clear preponderance necessary to avoid summary judgment.

The trustees of the pension fund contend that the arbitrator ruled on the issues surrounding Mar–Len's liability to the Pension Fund. The trustees argue that Mar–Len essentially agreed with the original decision and may now only contest the withdrawal amount awarded. Plaintiffs correctly state that any new defenses are barred because the defenses were not exhausted administratively as required by the statute. *See* 29 U.S.C. § 1401(a)(1) (*"Any* dispute between an employer and the plan sponsor of a multiemployer plan ... *shall* be resolved through arbitration." (emphasis added)).

On the other hand, Mar–Len claims that it was legally released from withdrawal liability because of certain checks cashed stating "in full and final payment" of all claims against Mar–Len. For the same reason Mar–Len also alleges that estoppel applies and the pension fund is precluded from assessing withdrawal liability.

■ The fatal flaw with this release argument is that Mar–Len failed to raise the issue of release in the arbitration proceeding. As noted above, Congress expressly indicated a preference for arbitration under MPPAA. 29 U.S.C. § 1401(a)(1). Further, it is well settled that defenses or issues not raised in the arbitration proceeding are waived. *See e.g. Bd. of Tr. Trucking Emp. Pension Fund v. Centra*, 983 F.2d 495, 507 (3d Cir.1992) (stating that ERISA requires an employer to initiate arbitration to preserve any defenses to the Fund's assessment of liability); *and see N.Y. Teamsters Pen. & Ret. Fund v. McNicholas Trans.*, 848 F.2d 20, 22–23 (2d Cir.1988); *Flying Tiger*, 830 F.2d at 1255.

■ Even if we assume that the Mar–Len raised this issue in arbitration, it is irrelevant. Mar–Len points to certain checks cashed by the Pipefitters Local Union 195 Welfare Trust Fund as payment in full of all claims against payor. However, Mar–Len fails to note that pension plans are not parties to collective bargaining or participation agreements. *Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151–52 (7th Cir. 1989). This general rule prohibits actions of the local union from relieving an employer of its obligations to make pension contributions. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 469–71, 80 S.Ct. 489, 495–96, 4 L.Ed.2d 442 (1960). The Supreme Court in *Lewis* realized that the trusts and pensions have independent obligations to workers. *Id.* Additionally, Congress created 29 U.S.C. § 185(b) in response to the continued defenses unleashed against national trusts and pensions. Congress specifically enacted this statute because "[s]ound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises." 126 Cong.Rec. 23039, 23288 (Rep Thompson). Consequently, the fact that Mar–Len wrote on the back of a check certainly would not release it from withdrawal liability.

For these same reasons the pension fund cannot be estopped from collecting its withdrawal liability even if we assume that the Union caused Mar–Len's withdrawal. Actions of the Union are irrelevant to a determination of employer liability to the National Fund. *Central States*, 870 F.2d at 1151–52.

Mar–Len also disputes the arbitrator's finding that it continued to perform pipefitting work after terminating its agreement with the union. This is an obvious fact question. Factual determinations of the arbitrator are presumed correct unless rebutted by a clear preponderance of the evidence. 29 U.S.C. § 1401(c). Mar–Len attempts to engage the court in a semantic escapade to question whether the company continued to perform pipefitting work. Mar–Len's affidavit does not remotely present the clear preponderance of evidence necessary for this court to reverse an arbitrator's finding of fact.

Furthermore, any constitutional questions on the validity of the statutory scheme for determining withdrawal liability raised by Mar–Len are also irrelevant. The Supreme Court held that the statutory scheme for determining withdrawal liability is constitutional. *Concrete Pipe Products of Calif., Inc. v. Constr. Laborers Pension Trust for So. Calif.*, —— U.S. ——, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). Additionally, no evidence suggests that the arbitrator incorrectly applied the statutory scheme in determining withdrawal liability.

For the foregoing reasons, this court grants plaintiffs' motion for summary judgment on Count I, thereby affirming the arbitrator's initial award in all respects.

### B. Single Business Enterprise Theory

Plaintiffs also ask this court to grant summary judgment on Count IV alleging that the three defendants' actions constituted a violation of Texas' Single Business Enterprise Theory of liability. *See Paramount Petroleum v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Allright Texas, Inc. v. Simons*, 501 S.W.2d 145, 150 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Murphy Bros. Chevrolet Co., Inc. v. East Oakland Auto Auction*, 437 S.W.2d 272, 275–76 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.).

Plaintiffs, however, fail to comprehend the breadth of the statutory scheme of ERISA and the Supreme Court's even broader interpretation of the terms "relate to" under section 514 of ERISA. 29 U.S.C. § 1144 (1988); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Congress deliberately created ERISA to " 'establish pension plan regulation as exclusively a federal concern.' " *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). 29 U.S.C. section 1144(a) specifically states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The Supreme Court in *Shaw, supra*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900, defined the term 'relates to.' The Court determined that "[a] law 'relates' to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. This liberal interpretation of 'relates to' preempts state law, even if the law is not designed to affect ERISA plans or if the effect is indirect. *Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1552–53.

According to *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990):

> Section 514(a) was intended to ensure that plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.

The Fifth Circuit, in following *Ingersoll*, stated that "ERISA will be found to preempt a related state law even where the state law is not specifically intended to regulate ERISA covered plans." *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994).

In the present case, plaintiffs allege that Texas' Single Business Enterprise liability should apply to hold Constructionistics and Blackwell & Blackwell jointly and severally liable for Mar–Len's withdrawal liability. This state common law action is preempted by ERISA. Specifically, 29 U.S.C. Section 1301(b)(1) expressly preempts this type of claim. Section 1301(b)(1) provides:

> For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.

This court finds that section 1301 applies to the present case. Congress enacted this section to prevent businesses from avoiding their ERISA obligations. *Central States Pension Fund v. Johnson*, 991 F.2d 387, 388 (7th Cir.1993); *N.Y. Teamsters Pension & Retirement Fund v. McNicholas Transp.*, 848 F.2d 20, 22 (2d Cir.1988); *Teamsters Pension Trust Fund v. H.F. Johnson*, 830 F.2d 1009, 1013 (9th Cir.1987). This provision indicates that the treasury regulations serve as the framework for defining the parameters of what businesses should be treated as a control group. 29 U.S.C. § 1301(b)(1); 26 C.F.R. § 1.414(c)–2(c)(1).

It is generally agreed that only two elements are necessary to establish 'common control' for purposes of section 1301(b)(1). Liability attaches to other entities when they are (1) trades or businesses that are (2) under common control. *Connors v. Incoal, Inc.*, 995 F.2d 245, 254 (D.C.Cir.1993). This test includes "brother-sister" groups which are defined as:

> two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own ... a controlling interest of each organization, and (ii) taking into account the ownership of each such person

only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.

26 C.F.R. § 1.414(c)–2(c)(1).

In the present case, no question exists whether each of the defendants are trades or businesses within the meaning of the statute. As such, the only remaining question is whether the defendants were under common control. Final determinations of "control" must be made with reference to the purposes and goals of ERISA and the MPPAA as well as the terms trade or business under the tax code. *Connors*, 995 F.2d at 250.[4]

The following definitions are guides. A "controlling interest" is defined as ownership of at least 80% of the voting shares. *See* 26 C.F.R. § 1.414(c)–2(b)(2)(A). " 'Effective control' is demonstrated by ownership of at least 50% of the combined voting power of all the voting stock of a corporation...." *Central States Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 793 (7th Cir. 1992); *See also* 26 C.F.R. § 1.414(c)–2(c)(2)(i). The concept of common control under ERISA focuses on ownership and control, not the group members' operational relationship. *Trustees of Amalgamated Ins. v. Sheldon Hall Clothing*, 862 F.2d 1020 (3d Cir.), *cert. denied*, 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989). Courts must keep in mind Congress' purpose for enacting section 1301, that is, to prevent employers from avoiding withdrawal liability by fractionizing their operations or "selling off" assets. *Personnel*, 974 F.2d at 793; *Western Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 894 (9th Cir.1988).

For example, in *Personnel*, the court held an individual personally liable for the withdrawal liability of his corporation due to the real estate activities conducted by the individual while using his company's building and assets to claim certain tax deductions similar

---

**4.** The court in *Connors* looks to *Commissioner v. Groetzinger*, 480 U.S. 23, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987), for the definition of trade or business. *Connors*, 995 F.2d at 250–252. The court, following the Seventh Circuit, determined

that this definition best qualifies these terms. However, the court does not strictly adhere to this definition and includes the goals of ERISA and the MPPAA as factors in determining liability. *Id.*

to those deductions claimed by a real estate business. *Personnel*, 974 F.2d at 795. The court determined that section 1301(b) does not require an economic nexus other than common ownership as a prerequisite to withdrawal liability. *Central States*, 974 F.2d at 793. If common ownership exists, the pension fund must only prove that the entities engaged in a trade or business. *Id.* The court held that the operations of two companies constituted a "brother-sister" group under 26 C.F.R. § 1.414(c)–2(c) because the real estate activities were substantial, designed to produce income, and allowed for deductions of operational expenses from his business. *Id.* at 796.

In the present case, viewing the facts in the light most favorable to the defendants, no genuine issue of material fact exists that defendants were a group of commonly controlled businesses. Mar–Len, with the support of Constructionistics and Blackwell & Blackwell, attempted to avoid withdrawal liability by organizing a sale of assets from Mar–Len to the other defendants in an effort to fractionize its business operations.

It is undisputed that Ms. Blackwell owned a controlling interest in Constructionistics and was a partner in Blackwell & Blackwell. It is further undisputed that she owned at least eight percent of Mar–Len and regularly acted as a consultant for the company. Mr. Malinowsky, her father, owned the remaining controlling interest of Mar–Len. Therefore, the guidelines under 26 C.F.R. § 1.414(c)–2 were met.

Letterhead signed by Ms. Blackwell further indicated that her role as consultant extended beyond a mere consultant to that of a Vice–President. Ms. Blackwell even acted for Mar–Len in the arbitration hearings. The father/daughter relationship also implies a degree of familiarity and common control for the benefit of the whole. Additionally, these companies regularly conducted business with each other. However, no records existed to show that Mar–Len owed money to Constructionistics or Blackwell & Blackwell for equipment rentals. No invoices for the equipment were made. The lack of written financial data was explained through an oral agreement that provided that no month-ly payments were necessary as long as Mar–Len acknowledged its debt and agreed to pay when it was financially able to do so. The fact that no accounts receivable existed referencing these business transactions, coupled with the curiously timed "fire sale" of assets at Mar–Len, under the auspices of recognizing prior indebtedness, certainly supports a finding of common control under section 1301.

Section 1301 also does not require an economic relationship between the entities in order to find that they are under common control. *Central States*, 974 F.2d at 793; *Trustees of Amalgamated Insurance Fund v. Saltz*, 760 F.Supp. 55, 57–58 (S.D.N.Y.1991); *see also Connors*, 995 F.2d at 253–54 (citing cases that require economic nexus between entities and principle and noting that some courts do not even require an economic nexus to find common control). However, the fact that an economic relationship existed in this instance further supports this court's determination that Constructionistics and Blackwell & Blackwell should be held jointly and severally liable for the withdrawal liability incurred by Mar–Len.

Viewing the record in the light most favorable to the defendants, this court finds the record replete with uncontroverted evidence supporting a motion for summary judgment. Having found a surfeit of evidence supporting common control, liability is joint and several for trades and businesses exercising such control. *Vaughn v. Sexton*, 975 F.2d 498, 504 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1268, 122 L.Ed.2d 664 (1993). Therefore, this court finds that Constructionistics and Blackwell & Blackwell jointly and severally liable for the withdrawal liability owed to the plaintiffs by Mar–Len.

## C. Attorneys' Fees

The plaintiffs seek attorneys' fees on appeal pursuant to 29 U.S.C. section 1132(g)(2). A district court must award reasonable attorney's fees when a fund prevails in a suit to compel payment of withdrawal liability. *See* 29 U.S.C. § 1132(g)(2)(D); *and see Trustees of the Plumbers and Pipefitters*

*National Pension Fund v. Mar–Len,* 30 F.3d 621 (5th Cir.1994). In *Mar–Len,* the Fifth Circuit recognized that "an employer's failure to make interim withdrawal liability payments creates a delinquency in contribution under 29 U.S.C. § 1451(b), which gives rise to the MPPAA's mandatory grant of attorney's fees." *Mar–Len,* 30 F.3d at 626 n. 4; *see also* 29 U.S.C. § 1132(g)(2)(D). Since Mar–Len persisted in its reluctance to make interim withdrawal liability payments, 29 U.S.C. section 1132(g)(2)(D) applies to the present case.

## IV. CONCLUSION

This court finds no error in the arbitrator's award of withdrawal liability. Therefore, summary judgment is granted with respect to Count I of plaintiffs' First Amended Complaint. Plaintiffs' motion for summary judgment is denied with respect to Count IV but, because this court finds that the defendants exercised common control over the business operations of Mar–Len, summary judgment is granted pursuant to 29 U.S.C. section 1301(b)(1). Further, an assessment of attorneys' fees and costs is mandatory against any defendants that challenge the arbitration award under ERISA and fail to demonstrate that the withdrawal liability was improperly assessed. Therefore, plaintiffs are awarded reasonable fees and costs. If the parties do not agree upon a reasonable fee to be awarded to plaintiffs' attorneys, the court will set one based upon the time necessarily spent, the complexity of the case, the results obtained, and the usual, reasonable and customary hourly charges made by attorneys in this jurisdiction.